All right, let's call the first case. 18-1473 Chavez v. Arizona Automobile Ins. Co. Mr. Levy for the appellant. Good morning, your honors. And thank you for your time this morning. May it please the court, counsel. I'm here, Mark Levy, representing Georgina Chavez as assignee of Marlena Wicker. Marlena Wicker was the driver of the car. And with me, representing the plaintiff's appellants in this case, is Desiree LeCru. And what we're talking about here is a dismissal of the bad faith complaint based solely upon a determination that the four corners of the applicable complaint did not provide all elements of coverage. And, your honors, I think it's taken me a while to figure this out. But I think I figured out what the problem was here. And the problem was here is this is a semantic problem. We have all over the case law, and I do want to point out that there are only four Colorado Supreme Court cases cited in the appellee's response brief. And with the exception of one trial court opinion from Judge Babcock, not a single case discusses the question of the complaint has to establish all elements of insurance coverage. And so it's a semantic problem because we hear over and over the four corners, the four corners, the four corners, or the complaint rule, or the complaint rule, and that rule is designed to examine and evaluate if the things in the complaint are true, does it fall within the coverage of the policy, not who is uninsured. There's not a single case that says the complaint rule should be determined to determine or should subvert the requirement of the insurance company, which has a duty to investigate under Colorado law. What reason do we have to think that the Colorado Supreme Court would carve out an exception to the four corners rule under these facts? The rule urged by the appellee here, the insurance company here, results in an absurd result. An insured has an automobile accident. They're an insured under the policy. They tell the insurance company they had an accident. They told the insurance company it's their fault. They told the insurance company, here's the police report. And then the insurance company says, well, I don't have to do anything until and unless a complaint is filed, first of all. And that just eliminates the investigatory function of the insurance company, which is required to investigate and then hopefully try to settle the case because they don't have a duty to do that because nobody's filed a complaint yet alleging that the person is an insured under the policy. And that's all we're talking about here. So under the facts of this particular case. So what I'm telling you, Your Honor, is I don't think this is an exception to the complaint rule because – You don't think it's an exception? Why not? No, sir, because the insurance company – Don't we have to look to extrinsic evidence here? No, sir. Not to determine whether or not somebody is an insured. We think what has happened here – Why are we – you should win under the Four Corners rule then. Am I misunderstanding something? Yes, sir. What if no complaint is ever filed? So if no complaint is ever filed, the insurance company is under the rule alleged here. If no complaint is ever filed, the insurance company never has to try to settle a case, try to investigate a case, do anything else with a case. You've changed. A complaint has been filed in this case. Correct. Don't argue about where one hadn't been filed. Correct. Under your argument, why don't you win under the Four Corners of the complaint rule? Well, we think we do because the Four Corners of the complaint rule says that unless the insurance company can show absolutely no possibility of coverage, then they have to provide the defense and provide the coverage. What in the underlying complaint would allow the insurance company to have any knowledge at all that she was an insured? The fact that it alleges that she was the driver and the vehicle that she was driving, which the insurance company had actual knowledge of by virtue of the police report. Did the insurance company ever have a copy of that underlying complaint initially? Yes, sir. They received a copy of the underlying complaint on 9-30-2015 with the affidavit of service. And that's at the record in the appendix at page 82. And then if you look at the record from the claim notes from the insurance company, which starts at the appendix, page 74, it shows that their first notice five months before the complaint was filed, April 10, 2015, they knew they had the same involved vehicle, that the vehicle was listed in the policy, that the involved driver was Javier Galindo. So they had actual knowledge that this was an insured vehicle. They had the driver wrong. Point specifically, what allegation in the complaint would you identify as determining the actual knowledge? And I'm not talking about a police report now. We're staying with the four corners of the underlying complaint. What particular provision of that complaint? Are you just saying the fact that you had involved by name, Ms. Wicker, would have been enough for them to be on notice? Yes, sir. Because of their required investigatory function and because of the actual knowledge that they did have. If you look at the record. Well, when you talk about actual knowledge, you're talking about knowledge of extrinsic facts that are beyond the complaint. Yes, sir. And yes, yes, sir, and I appreciate the candor, but that gets you outside of the four corners of the complaint. And Colorado law is clear. And beyond that, even if there was a question of what Colorado law said, we have said that that's what Colorado law means. Yes, sir. SAMHSA has said that. AMCO said that. And we are bound by our own interpretation of Colorado law until the Colorado Supreme Court tells us we're wrong, right? Yes, sir. Okay. Then we're in that world. Whether you want to be in that world or not, whether that world's fair or not, that's the world we're in. So that means we're looking not at external information. We're looking at what's in the underlying complaint, right? Yes, sir. Well, no, sir, because I think the paradigm is all wrong. I'm not asking you whether it's wrong. I'm asking you, is that the law? Is that paradigm the law? Your Honor, I do not believe the law is. To determine whether the insurance premiums are paid, to determine whether a policy exists is decided at all by the four corners of a particular complaint. There are many things that are required for the whole panoply of coverage, like is somebody uninsured? Do we own a policy for this person? That is never required in a complaint. It's never in a complaint. And most times, plaintiffs don't have that information. And I am informed by this court's opinion in the Dish Network v. Arch Specialty Corp. that talks about the fact that the reason we have this broad rule is because it operates to cast a broad net such that when the underlying complaint alleges any facts or claims that might fall, might, within the ambit of the policy, the insurer must tender a defense. Insurers have a heavy burden to overcome, et cetera. This liberal approach recognizes the reality that notice pleading does not contemplate detail and specificity, and complaint may initially lack the detail necessary to inclusively establish the duty. But it's all about every single case that talks about the four corners in the complaint rule, talks about if these facts are correct, does it fall within the insuring language of the policy? Not is the person uninsured, have they violated the policy from some policy condition, or have their premiums been paid? It speaks towards coverage, and coverage involves having some indication on the cover, face of the complaint, that there is coverage by Arizona as it relates to Ms. Wicker. And that is where I'm hung up, because I don't see anything in the underlying complaint that would suggest that Arizona wouldn't have been on notice. Well, I would also, well, the one thing that Arizona says it was not on notice of is that Ms. Wicker was uninsured under the policy. Right, and why doesn't that fall within the scope of the coverage question that has to be answered that's subject to PAMPA, AMCO, and the Colorado Supreme Court cases that those two circuit cases interpret? Because every single one of those goes to the question of, does this claim state a claim that's covered, i.e., was there an occurrence? The threshold issue on coverage is, is that individual uninsured, right? That is a threshold issue for the big panoply of the big picture called coverage. But it's never been required, there's not a single appellate case, not a single one in Colorado, that says to determine whether somebody is an insured or whether they have paid their premiums or whether there's a policy violation, you have to look at the underlying complaint. The allegations listed here of Arizona is that every single complaint, regardless of what's happened before, and I think this rule would relieve an insurance company of their statutory duties to investigate a claim, they can just ignore the fact that they're insured has reported that they were involved in a claim and say, well, okay, we'll wait and see if there's a complaint. And we'll see if somebody identifies this person as being an insured or a permissive user or something like that. And that's not what the Four Corners Rule is intended to apply to. And in fact, Magistrate Judge Hegarty got that correct with his initial order on May 15, 2018, at the appendix, page 87, and that's exactly what he said, is that the Four Corners Rule doesn't apply to every single element of coverage, but only those elements it covers to talk about whether or not these things are covered under the law. And again, I'm informed by United Fire, I'm sorry? We certify this case to the Colorado Supreme Court? I think that would be an excellent idea. But have you ever asked for that? I don't believe we did ask for that. And I apologize. I wasn't involved from the very beginning. So if we take a look at the – One of the external sources that you pointed at below, I believe, that we should look to is the second amended complaint and the allegations in it. Yes, sir. As far as I could tell from your opening brief, you are not relying on the second amended complaint, again, as a source of external information, are you? Yes, sir, we are. What page are you doing that? I didn't see it. All right, this is a little complicated because the second amended complaint, the whole premise of the defendant's motion here to dismiss is that if there's no duty to defend under the four corners of the complaint, and the only reason why is because they don't have the identity of the – they don't know that the driver isn't insured, but they do from these appendix sheets that I've told you, they do have actual knowledge of this. And, again, our position is they can't just hide their head in the sand. And the second amended complaint does allege that she's a permissive user, et cetera, but that gets to the point that we also allege in our response to Magistrate below that that sole fact is not determinative of the entire case. Looking at the briefing in your case, you are not relying on the second amended complaint on appeal here, are you? Well, no, sir, because the order was entered – That's a good question. That's fine. So the answer is no, right? Correct. Because the order was entered based upon the underlying complaint below. Could I ask you a quick – let's break topic for a second. The topic here is jurisdiction. When I look at the second amended complaint, we're bound to determine diversity jurisdiction. It speaks about residency. It doesn't speak about citizenship. It doesn't allege the citizenship of Arizona. Are you prepared to represent that there is diversity here? And, if so, is there anything in the record that would validate that? I don't think we know that as a factual matter. That's for the defendant to have raised. Oh, no. No, no, no. I think that right now, if this case is going to be here at all, we need to know that there's diversity jurisdiction, right? Yes, sir. Okay. Is there? We are relying upon the representations of Arizona for that fact. Oh, are you? We have an independent investigation of that fact. With respect to the second amended complaint, what I do want to add, and we did reference this in response to Magistrate Judge Hegarty below, at briefing at page 38 of the appendix, at page 43, that the complaint is not the end of the day. Because even if there is no duty to defend under the four corners of the complaint, there is still a duty to do a reasonable investigation. And so, therefore, the case should not have been dismissed in its entirety. And then what we also finally know is all of this might be moot because we know from the appendix documents from the insurance company, which is in the 70s and 80s, that the insurance company did not deny this claim and deny a defense because of the four corners rule. They did it because of, we think, a mistaken reference to cooperation. With that, Your Honors, I'd like to... Oh, I have a question. On the underlying complaint, is that your preparation in this case? My personal no, sir. Oh, that was done by other attorneys? Yes, sir. And I noticed that in that underlying complaint, nowhere was it alleged that she was the driver of a vehicle with permission. Is that correct? The word permission is not used, correct. Nor would we know that fact at the time, nor does any plaintiff know that fact at the time. But that's the underlying complaint that we're involved with here. Correct. And that, I think, applies to the theories of recovery, not to whether the premiums have been paid and things like that. Those are never required to be pled. And with that, I'd like to reserve the remainder of my time. Thank you, Counsel. Let's hear from Arizona. Thank you, Your Honors, and may it please the Court, Counsel. My name is Wenzo Taylor, and I'm here on behalf of the Appalachian, in this matter, Arizona Automobile Insurance Company. You're a little taller than where the microphone is, so. Can we hear it? All right. Although I think the consequence of a determination of lack of jurisdiction results in this case being out, which would hurt the appellant as well as you, the appellant appears to be relying on you for a determination that we have jurisdiction. Is this, in fact, a diverse matter? And what in the record? It's not the Second Amendment complaint. It's not the first complaint, the underlying complaint. What in the record indicates that we have diversity here? Your Honor, the plaintiff in this case, Georgiana Chavez, is a resident of Colorado. I'm talking about pleading. Okay, she's a resident of Colorado. Is there anything in the record that says what the citizenship of these parties are? In the notice of removal, it was alleged in there, and also it is included as an exhibit. The traffic accident report is included as an exhibit to plaintiff's response to the motion to dismiss, and then also the supplemental briefing on the motion to dismiss. So I do believe jurisdiction is proper. Can you speak up? I'm having trouble hearing you. Yes, sorry. I do believe jurisdiction is proper based on the facts, including the traffic accident report, which is included with the briefing on the dispositive motion in this case. And the notice of removal indicates it as well? Yes, Your Honor. Okay. Eight years ago in United Fire v. Boulder Plaza, this court was asked to broaden the exceptions recognized by POMPA and AIMCO to require consideration of extrinsic evidence not necessarily contained in another complaint as long as the insurer had knowledge of such evidence when it denied coverage. This court responded with five simple words, we will not do that. In the intervening eight years, Colorado appellate courts have not expanded the complaint rule and have not endorsed or recognized either of the exceptions that have been recognized by this court. The beginning point of the analysis most focused on the rule itself. Here, the Colorado Supreme Court has articulated the complaint rule in categorical and unequivocal terms. The insurer's duty to defend arises solely from the complaint in the underlying action. There has never been a Colorado appellate court that endorsed looking outside the complaint, regardless of the veracity of the allegations contained in the complaint or regardless of what the insurer may know or may suspect. How much more was necessary here, let's say, if Chavez had included Ms. Wicker's address, would that have satisfied the complaint rule? I do not believe that allegation alone would have satisfied the complaint rule given that it was an apartment complex and the nature of apartment living is people can sometimes move. However, if the vehicle involved in the accident, which I believe was a 2012 Mitsubishi Lancer, if that would have been identified in the complaint, it might be a different story because they could have looked at the complaint compared to the insurance policy in the declarations page and seen that an insured vehicle was involved in the accident. They may have had questions as to how she was operating the vehicle, but that would be a different set of circumstances than what we have in this case. You would presume that she might have been a permissive driver then? There would certainly be a question. If they had identified the car? There would certainly be a question. I don't believe that there would be a presumption of permissive use. Does that satisfy the Four Corners rule? In that hypothetical, Your Honor, I do believe that would satisfy because there would be a question as to whether this person was using the vehicle with permission. It's at least possible at that point. It's at least raised it to a sufficient level of possibility. So not a particularly onerous burden? No, and I believe that the complaint rule was enacted by the Colorado Supreme Court specifically because it doesn't create an onerous burden on the insureds to establish that they might be entitled to a defense. I get that, and there's a bit of a policy argument here, a public policy argument, and that is if the insurance company has actual knowledge, I mean that's kind of where he ends up, it would be unfair to let the insurance company evade that actual knowledge because of the Four Corners rule, and a lot of other jurisdictions have created an exception for actual knowledge. That might even be the trend or the momentum, but it seems to me if we're furthering the policyholder-insurance company relationship, we usually default towards the policyholder. Why shouldn't we do that here? I don't believe that should be done. Or why wouldn't the Colorado Supreme Court do that here? I don't believe the Colorado Supreme Court would make the monumental shift that's been proposed by the plaintiff in this case, and I believe the Colorado Supreme Court in the Compass v. City of Littleton case referenced that the public entities in that case submitted extrinsic evidence showing that the, I believe it was discharges of potentially hazardous substances, might have been beneficial for certain purposes as in croplands or something like that, and the Colorado Supreme Court said that they're not going to consider, and courts should not consider the extrinsic evidence even if it might establish coverage. The fact of the matter is that the complaint controls in the Colorado Supreme Court has consistently and unequivocally held that. Now, the last case that addressed Colorado's complaint rule from the Supreme Court was the Cotter case in 2004, and in the 15 years since that case was decided, they have not taken up a case addressing the duty to defend. Despite being presented with the opportunity, we cite it in our brief, but the TCD v. American Family case from the Court of Appeals looked at the exceptions that were identified in POMPA and AAMCO and said that they didn't apply to that case. Not only do they not apply to that case, but we're not persuaded to rewrite the complaint rule, which is what plaintiffs are asking here, is to rewrite the complaint rule. It's not an exception because then the rule becomes the knowledge rule, and Colorado has not given any indication that they are going to make a substantial shift in insurance law in Colorado to include actual knowledge or constructive knowledge. You don't question that we are bound by AAMCO and POMPA, right? I would agree, Your Honor. Yes. Although I believe that this Court's decision in Boulder Plaza recognized some of the limitations existing in POMPA and AAMCO, and in Boulder Plaza, this Court decided or held that it would not consider documents in the insurer's file which might have gone to implicate, establish, or at least suggest coverage for potentially ongoing operations, I believe was the issue in that case. Okay. So, well, whether Boulder Plaza would extend those two cases, the fact remains we're bound by the holdings of those two cases, right? Yes, Your Honor. Is there anything in the record that indicates whether Arizona actually received the underlying complaint? Because I know they rely upon the return of service, but it's not clear to me whether the complaint would have been actually served. I mean, is there anything in the record that speaks to that issue? I believe that the record reflects that the return of service was provided to Arizona. I don't believe a copy of the complaint existed in their file, and I believe in their claim notes there was also some confusion on their part as to who the driver of the vehicle was. Now, I think that also goes to what we're talking about with actual knowledge. The actual knowledge in this case would be, if it were accepted, would be that the vehicle was eventually driven by Marlena Wicker. There's no actual knowledge that she might be an insured person, and I think that's important because it's being phrased as actual knowledge that she is an insured. Ms. Wicker was a stranger to the policy. She did not pay any premiums. She was not identified on the policy. She did not own any of the vehicles identified in the policy, and she was not a resident family member or spouse of a named insured. With the assumption that she was driving the car, there's no next step into putting her with permissive use, at least not with any presumption that's been recognized in Colorado. Do you agree that if the underlying complaint had said that she was driving a vehicle that was owned by X, that that would have satisfied the complaint rule? For the same reasons that my answer to Judge Timkevich's question was that I believe that would probably trigger the duty to defend, I believe in that circumstance, yes, because in that case, they could look and see that she was driving a vehicle owned by a named insured, and at least that starts you down the path of, well, is it possible that she was doing it with permission? And as I recall, that's not alleged in the underlying complaint. No. The underlying complaint, the factual allegations in the underlying complaint, in their entirety, I believe were paragraphs 4 through 8 of the underlying complaint. They identified the plaintiff, the date and time of an accident, and that there was resulting injuries. Did not identify the vehicle. It did not identify the owner. It did not identify any policy that might have applied to it. And I agree. Many plaintiffs would not include policy information in a complaint, but I don't think it's foreign or onerous that the who, what, where, why, when of an accident be included, which is the vehicles that were involved. That is a fairly common and fairly available fact to any injured party who has a copy of the police report. And the name? Yes. Okay. And they would have the name of the vehicle owner and the name of the driver at the same time. Now, Judge Timkovich, you raise an interesting point with the public policy concerns on this, and I would agree that that is a concern in this case. But I don't believe this case in this court is about the wisdom of the complaint rule as it's presently construed in Colorado. I don't believe it's about the public policy considerations of the complaint rule in Colorado. And if there's going to be a change to the complaint rule in Colorado, if the complaint rule is going to be abolished, modified, or completely rewritten, I think that must be left to the courts of Colorado as opposed to this court making a decision to perhaps force the hand of a Colorado court. Should we certify it over to the Colorado Supreme Court? I don't think that's necessary in this case, Your Honor. Unique or difficult factual circumstances, I don't believe are the kinds of justifications for certification of a question of law. I believe that unsettled law or new law, a situation that has never been contemplated, warrants certification. But I think here we're applying a well-settled legal principle in Colorado, which is the complaint rule. It's not a foreign rule. It's not an overly complex rule. It's fairly straightforward and simple. You hold up the policy, and you hold up the complaint, and you read across. And if the complaint identifies an insured person and a covered event, then you would provide coverage. And I think that's important, too, because any insurance coverage question starts with, do we have an insured person or entity, and do we have an event contemplated by the policy? And in this case, an auto accident would fall within the second requirement of a covered event. However, we'd never had an insured person that we could identify by looking at the complaint. And for the same reason that public policy probably shouldn't address the modifying the complaint rule in this case, I believe it's important to not extend it beyond where the complaint rule presently is, given that she never purchased the policy. She never paid the premiums. All of those policy considerations that they talk about in Colorado don't necessarily apply to a stranger to the policy who just happened to be driving a vehicle. You know, but we've already let a little bit of seepage in AMCO, didn't we, from the strict complaint rule? And, you know, in that particular case, I guess it benefited the insurance company. In AMCO, there were several complaints all arising out of a common injury, a common set of operative facts. As I recall, there was a Ponzi scheme that might have been enacted by an insurance broker who had been retained by the property management company. So with all the—they were still considering facts and complaints. They were just complaints filed by other plaintiffs for the exact same injury. And I believe in that case, while it's not explicitly stated, those cases all, in theory, could have been consolidated because they arose out of a common set of operative facts. Now, the damages would have been different. It might have been unwieldy, but at least in theory, those cases could have been consolidated because they all arose from the same event. So considering all of those complaints together doesn't necessarily conflict with the complaint rule and for the same reason that the POMPA exception wouldn't conflict with the complaint rule either because judicially noticeable facts can be read into a complaint on a motion to dismiss under Rule 12b-6. And with that, I would ask that the court affirm the dismissal of the lower court. Thank you. Thank you, counsel. We have some rebuttal time remaining. Twenty-seven seconds. Thank you, Your Honor. I would like to point the courts to page 78 of the record, which is where they received the police report. They said that the driver has the same address as the insured. They show that it's the exact same vehicle. And then at page 83 of the record, where they show that the suit doesn't name the right driver. Anyway, they didn't review the complaint. That's not the reason they denied it. And, Your Honors, we would think that this would be perfectly appropriate for certification of the Colorado Supreme Court because there is no case. This is an expansion to say that the complaint rule applies to the other issues of coverage, not just the theories of liability in the complaint, but any other issue of coverage like notice or payment of premiums or who is an insured. The Colorado Supreme Court nor any appellate court in this district or the Colorado Court of Appeals has applied that to those other investigative questions rather than theories of liability.  I think we understand your arguments. Counsel are excused and the case shall be submitted. Thank you all for your time this morning.